IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**NATHANIEL BLAINE TRAMEL**                                              **PLAINTIFF**

**V.**                         **CIVIL ACTION NO. 3:22-CV-174-DAS**

**KILOLO KIJAKAZI,**
**ACTING COMMISSIONER OF SOCIAL SECURITY**             **DEFENDANT**

**MEMORANDUM OPINION AND JUDGMENT**

This cause is before the court on the plaintiff's complaint for judicial review of an unfavorable final decision of the Commissioner of the Social Security Administration regarding his application for supplemental security income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit. The court, having reviewed the administrative record, the briefs of the parties, the applicable law and having heard oral argument, finds the decision of the Commissioner of Social Security must be reversed and remanded.

**FACT SYNOPSIS**

The plaintiff, Nathaniel Blaine Tramel, filed for benefits on February 19, 2020, alleging onset of disability commencing in August 1, 2019. The Social Security Administration denied the claim initially and on reconsideration. Following a hearing, the ALJ issued an unfavorable

1

decision on January 20, 2022. (Dkt. 19 p. 23-30).[1] The Appeals Council denied the request for review, and this timely appeal followed.

The ALJ determined the plaintiff had a severe impairment because he had contracted human immunodeficiency virus (HIV). The ALJ found Tramel retained the residual functional capacity (RFC) to perform light work, with environmental limits preventing him from working at heights or around unguarded machinery. He also found Tramel must work in a climate-controlled environment to avoid extreme temperatures and humidity.

Tramel has no past relevant work experience. He has at least a high school education and was thirty-two years old as when he applied. Based on the testimony of the vocational expert, the ALJ found Tramel could do other jobs that exist in substantial numbers in the national economy. The ALJ, therefore, determined Tramel was not disabled.

## **STANDARD OF REVIEW**

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405 (g.); *Ripley v. Chater*, 67 F.3d 552, 553(5th Cir. 1995). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The ALJ is solely "responsible for determining an applicant's residual functional capacity." *Ripley,* 67 F.3d at 557 (citing 20 C.F.R. § 404.1546). It is not a

---

[1] All references are to the administrative record using the court's numbering system, rather than the administrative numbering.

medical opinion, but an administrative decision, and the ALJ has considerable discretion in considering not just the medical evidence in the record, but other evidence. *Perez v. Secretary of Health and Human Services*, 958 F.2d 445, 446 (1st Cir. 1991).

## ANALYSIS

### 1. HIV or AIDS

Nathaniel Tramel was diagnosed with HIV in December 2019. Two months later he was diagnosed as having AIDS. The ALJ in this case found that Tramel's HIV infection was a severe impairment at Step 2. He made no finding at Step 2 about the AIDS diagnosis, and the decision never mentions the fact that Tramel's records record and repeat this diagnosis.

While there is no dispute Tramel does not meet any of the AIDS listings in full one listing includes the "equal than or less than 200 CD4" as half of a listing. The other half requires either an underweight BMI at 18.5 or low hemoglobin count of . 20 C.F.R. Pt. 404, Subpt P, App. 1, Listing 14.11. While Tramel's lowest recorded BMI was a normal 23.4 this was a drop from his recorded 31.1 BMI, representing a loss of one-quarter of his weight in about six months. He also had an abnormally low reading on his hemoglobin of 10.3, but not a listing levels reading of 8.0.

### 2. Issues Raised

The significant issues in this case arise from the failure of the ALJ to address the claimant's AIDS diagnosis.[2] Tramel was diagnosed with HIV in December of 2019. Two

---

[2] The plaintiff has raised three other issues. The argument that the ALJ has either misrepresented the facts of the case and further failed to consider all of the plaintiff's symptoms are subsumed into the above discussion of the two primary issues. The final argument that the ALJ erred in not doing a supportability and consistency evaluation on the report of the consultative examiner is without merit because the CE's report is not a medical source statement under the agency's regulations. 20 C.F.R. § 416.913(a)(3).

months later his treatment team at the Aaron Henry Medical Clinic diagnosed him with AIDS, based on a lab report showing his CD4 count was equal to or less than 200. The AIDS diagnosis is also supported by the fact that Tramel had already been treated several times for candidiasis, commonly called thrush, one of several opportunistic infections commonly occurring in AIDS patients. Furthermore this AIDS diagnosis was repeated multiple times in his treatment records. (R. 299, 301, 302, 306, 313, 317).

There is a contradictory report of the consulting examiner (CE) based on his October 2020 examination of Tramel. This doctor was not provided with Tramel's medical records which included the existing AIDS diagnosis, and he did not have lab reports from the Aaron Henry Medical Clinic. Though the CE references an initial low count, the report does not indicate that he had the exact numbers listed in the medical records. Though acknowledging that Tramel did not know the latest results, the physician nevertheless relied on Tramel's history to conclude the plaintiff "only had HIV." The CE decidedthat despite the repeated episodes of candidiasis, he had not progressed to AIDS because none of the infections had occurred "recently." There is a contemporaneous lab report with multiple abnormal lab values, but the CE report does not mention or interpret this lab work.

The CE never mentioned or discussed lab work done contemporaneously with the CE. Nor is this lab work discussed in the reports of the state agency medical consultants (SAMC) or the ALJ's decision. There re is no lab work anywhere in the administrative record that demonstrates that Tramel's CD4 count went above the "</= 200 count."

The state agency medical consultants (SAMC) reviewed the Aaron Henry records and the CE's report. Their reports mention the CD4 levels listed in the Aaron Henry records, but apparently relying on the CE's report, neither of them refer to the AIDS diagnosis.

The court is therefore confronted with a case in which the plaintiff's medical record shows AIDS, but the diagnosis was not addressed at Step Two. The fundamental question to be answered is whether this error is harmless. The plaintiff also argues the ALJ "cherry-picked" the record to try to support the denial. In this case this argument is closely related to and overlaps in part with the first issue.

Given these two issues, the court has combed through the record in considerable detail and finds that its decision to affirm or remand requires detailed discussion of what the record reveals.

### 3. The Medical Records

On June 7, 2019, months before his HIV diagnosis, Tramel was seen for complaints of cough and chest pain. He had a white coating on his throat, indicating candidiasis and was treated with Diflucan. As early as August 2019, Tramel was also seen with complaints of waking at night, vomiting, redness on his face, and a cough.

The claimant visited the Panola Medical Center Emergency Department on several occasions in December 2019, initially on December 15, 2019. He weighed 210 pounds, down substantially from 242 pounds recorded in a mid-August 2019 medical record (R. 286). At that visit, he complained of a cough. On December 20, 2019, Tramel showed abnormal weight loss and was referred to the hospital's clinic. The clinic notes are not included, but lab work done at that visit notes a low lymphocyte count.

On December 30, 2019, Nathaniel Tramel again went to the emergency room at the Panola County Medical Center complaining of nausea and vomiting. His earlier visit to the clinic for complaints of malaise, weakness, and weight loss is noted. At this ER visit, he complained of weight loss and inanition.[3] He was already being treated for oral candidiasis. He was found to be suffering from fatigue, malaise, poor food and liquids intake, and weight loss. He weighed about 200 pounds, down another ten pounds in fifteen days. He was treated with IV fluids for dehydration. He was tested and diagnosed with an HIV infection and was referred to the Aaron Henry Medical Clinic (AHMC) for further care. While much of the examination at the time of diagnosis was normal, Tramel was noted to be frail and somewhat cachectic.[4]

Since the diagnosis, Tramel has been treated at the Aaron Henry Medical Clinic beginning in January 2020. On January 10, 2020, Tramel was seen with complaints of constant fatigue beginning two months earlier. (R. 328-331). In addition to fatigue, he was experiencing weakness, poor sleep, and anorexia. He was noted to be both depressed and anxious. A facial lesion was noted on examination. He had an acute upper respiratory infection and was described by his care providers as follows: "General appearance: chronically ill, appears tired, body odor was abnormal and unkempt appearance." He was tested for sexually transmitted diseases and HIV, but the lab results are not included in the record. Treatment for cellulitis, a common but potentially serious bacterial skin infection, was started at this visit.[5]

---

[3] Merriam-Webster defines this as the exhausted condition that results from lack of food and water. (AHMC)
[4] References to cachexia, a "general physical wasting and malnutrition usually associated with chronic disease. Meriam-Webster. An abstract on the National Institutes of Health website notes: "Involuntary weight loss or wasting indicative of severe protein energy malnutrition is a frequent complication of acquired immune deficiency syndrome (AIDS). Malnutrition, with its associated adverse effects on immunocompetence, may contribute to the progression of AIDS itself. JH Von Roenn, E L Roth, R. Craig, https://pubmed.ncbi.nlm.nih.gov/1461629 (1992)
[5] https://www.mayoclinic.org/diseases-conditions/cellulitis/symptoms-causes/syc-20370762

6

On February 18, 2020, Tramel was seen for bilateral moderate arm and bilateral hand rash that started ten days earlier. (R. 320-324). The rash caused pruritis and examination showed a generalized brown rash on his body. He also had developed intermittent mouth sores, leading to another diagnosis of thrush of the mouth and esophagus. While no lab work is attached to the records, Tramel was diagnosed with AIDS at this visit and the records note his CD4 testing was less than or equal to 200. He was diagnosed as having a skin rash, allergic dermatitis, depression and anxiety, and GERD.

On March 18, 2020, Tramel reported feeling better, though his mother voiced concerns about his weight. (R.317-319). On examination Tramel was found to be exhibiting lethargy, weight loss, and muscle weakness. His records describe him as not well-nourished, looking ill, and appearing to be chronically ill. The records note his tired appearance at this visit, and he was down to 182 pounds.

On April 14, 2020, Tramel was still troubled with lethargy and muscle weakness. (R. 314-316). His provider's notes described him as not well-nourished, ill appearing, chronically ill and tired. The diagnosis remains AIDS. (R. 312). His weight in the month from his prior visit had dropped six pounds to 176.

Tramel's next visit was on July 28, 2020. ( R. 310-312). His records show he was still suffering from malaise and fatigue. The medical provider noted he continued to appear to be ill, chronically ill, tired and older than his stated age. His appearance is unkempt. Though Tramel had regained some weight -- up to 184 pounds -- these records noted that if his counts did not improve a change of medications may be necessary, but the lab reports are not included in the treatment records.

On October 28, 2020, Tramel reported his symptoms were worsening. (R. 305-309). His three-month labs were done at this visit, but are not attached to the treatment records. He had an upper respiratory illness with a dry cough and red tympanic membranes, bilaterally. He continued to gain weight, then weighing 202 pounds.

As noted by the ALJ in his decision, Tramel at his January 29, 2021 examination has no complaints, nor is he noted to appear unhealthy. His viral load is tested, but the lab report is not attached to the records nor are the results noted in the office records.

When seen again at the clinic on March 4, 2021, (R 299-300), Tramel was noted to be in no acute distress and well-nourished, but was complaining of epigastric pain and tenderness, suspected to be GERD. He weighs 199 pounds, down a few pounds from the earlier visit.

The last note in the AHMC records that a nurse practitioner spoke to him and "he is refusing at this time."

Though there is no further treatment in the administrative file, Tramel testified that he was seen at the end July of 2021, and again in November of 2021, when he was again tested for viral load. As of the December 2021 hearing date, Tramel had not received his test results.

**4. Consultative Examination and Report**

A consultative examination was done on October 7, 2020. As previously noted, the doctor was not provided with medical records, instead relying on Tramel's reports. His report concluded that Tramel's "only problem" was HIV for which he was diagnosed in 2019. His "first blood count was very low," and Tramel did not have the results from the latest testing. He noted the history of oral candidiasis several times but no other infections. He mentioned that Tramel,

8

though denying blood loss, was being treated for anemia. He noted Tramel had no skin lesions or pneumonia, though he had a cough at times. The doctor attributed the cough to Tramel's acid reflux. He repeated Tramel's claim of decreased stamina and general fatigue. Tramel denied he was depressed though he was on antidepressants.

The CE's review of systems was normal, with Tramel's range of motion and strength in his extremities being normal, though the CE noted Tramel tendency to shuffle his feet. The doctor concluded: "The man was diagnosed last year with HIV and is on medication currently. He doesn't describe progression to AIDS, but doesn't have the results of a recent CD4 and viral count. He described general fatigue. Vision was impaired and uncorrected."

A blood test, ordered by another doctor, was run on the same day as the consultative examination but is not mentioned in the CE's report, so it is unknown if he reviewed it. The results are labeled "abnormal" and include multiple abnormal findings: Abnormally low values for red blood cell count, hemoglobin, hematocrit, mean platelet volume, lymphocytes relative, and lymphocyte absolutes, and abnormally high for neutrophils and granulocytes. R. 289-291.

**5. SAMC Reports**

On December 11, 2020, Dr. Glenn James made his disability report explanation. He noted Tramel was six foot, two inches tall and weighed a reported 182 pounds. Tramel had a BMI of 23.4, within the normal range. R. 74. The report was done after reviewing the CE report, records received from the Aaron Henry clinic on October 14, 2023, the Panola Medical Center records, and the records from Dr. Wiliam Haire. James said Tramel had HIV Wasting Syndrome and HIV. He limited Tramel to a light level of exertion. James' report notes Tramel's CD4 count is

less than or equal to 200, and hemoglobin is low at 10.3 hemoglobin. Tramel is noted to have no recent infections but some fatigue. He found no environmental limitations.

On May 7, 2021, Dr. Lisa Venkataraman issued her report affirming James' assessment that Tramel was capable of performing light work. She notes the CD4 count from the Aaron Henry record and describes Tramel as having an asymptomatic HIV infection.

**6. Hearing Testimony**

The ALJ opened the December 2021 hearing with instructions about the conduct of the hearing, done by telephone because of the Covid 19 pandemic and by noting that there were no AHMC records after March of 2021 in the administrative record. R. 40. The ALJ also stated he needed to know Tramel's viral loads. R. 41.

Tramel testified that as he was 6'2" and weighed 250 pounds by the time of the hearing. He testified that he weighed 280 pounds before he got sick and that his weight dropped as low as 180 pounds. R. 41. He said he needed to steady himself and stretch on getting up. When asked about symptoms Tramel replied: "I don't know what really the symptoms would be aside from being able to get sick easier and I haven't been out and about much in the past year so haven't really gotten sick from anything."

Tramel testified very specifically about his visits to the clinic later in 2021. At his November 1 visit, his CD4 was tested and Tramel reported it was "still kind of low." He was also told he was still anemic but could not think of anything else. He testified he went every three months "unless something happens in between." His other visit in 2021, not included in the

administrative record, was "July 31st or July 30th, whichever one was on a Friday."[6] He reported that prior to the November 2021 visit at AHMC, the month before the hearing, he was having trouble with his leg giving out on him and not supporting his weight and was advised to do leg lifts. R. 44.

Tramel testified that he felt he just did not have the stamina necessary to work. He also testified that in early 2020 he had severe trouble walking or lifting his leg over the tub. R. 46. Though he said he was doing better by the time of the hearing, his balance was still off and his joints did not feel strong. He attributed his problems to losing all his weight and being sick with HIV. R. 47. Tramel testified consistent with his medical records that he began regaining his weight at the end of 2020. R. 48. He testified he could stand for about thirty minutes at time. He had a slight weakness in his calf muscles but could walk about sixty-five yards before having to rest and could sit for thirty to forty minutes. He could lift a gallon of milk without difficulty. R. 48-50. He testified that some days his legs were "off scale" and he sometimes didn't feel like getting up. R. 51. He also said he was having some memory problems. R. 55.

As an example of his lack of stamina, Tramel mentioned that he tried to help his mother with some yard work by raking leaves. He lasted an hour before he needed to sit down and rest. R. 55-56. He testified that he had no problem with his appetite.

## THE ALJ'S DECISION

The ALJ found Tramel had a single severe impairment -- human immunodeficiency virus positive. He then briefly mentioned that Tramel had a history of cytomegalovirus (CMV)

---

[6] July 30, 2021 was a Friday.

retinitus, a medically determinable impairment he found was not a severe condition. (R. 25). He found that Tramel's HIV infection did not meet a listing, a finding not challenged on appeal. He found Tramel could perform light work with the noted environmental limits.

In looking at Tramel's testimony, he found his statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical and other evidence in the record. The ALJ noted Tramel testified he could not work because of poor mobility and being unsteady. He testified to having muscle weakness and problems with his ankles and both feet. Tramel also testified that he had not noticed significant symptoms of late.

The ALJ states, erroneously as it happens, that Tramel's last visit to the Aaron Henry clinic for treatment for the HIV condition prior to the December 6, 2021, hearing was on November 1, 2020. The ALJ noted that as of that visit his CD4 measurement was still low and he was still anemic. Despite this finding, the ALJ then stated Tramel is seen every three months at the clinic. Tramel testified to problems with endurance, some forgetfulness and losing focus. Tramel, who is 6'2," by the time of the hearing weighed 250 pounds, though he reported his weight had fallen as low as 180 pounds. (R. 27).

The ALJ found that Tramel's statements concerning his limitations were not entirely consistent with the medical records. The ALJ noted the Panola ER records where he was seen for a six-pound weight loss and inanition.[7] He notes that the physical examination shows normal strength and range of motion and that he was diagnosed with a new HIV infection. R. 27.

---

[7] The medical record does say a six-pound weight loss, though the medical records show a much greater weight loss between August and December.

The ALJ did not mention the January visit to Aaron Henry. He noted that in February 2020 Tramel's musculoskeletal examination showed normal gait and station, normal joints, normal bones, and normal muscle strength and tone. His feet and toes were normal. The neurological, pulmonary and psychological examination were all normal. The ALJ did not mention the AIDS diagnosis made initially at that visit, nor did he mention the March visit. As for the April 2020 visit, the ALJ noted Tramell complained of muscle weakness but said that aside from the general appearance of not being well-nourished and appearing ill and chronically tired, the objective examination was within normal limits.

The ALJ repeated the report from the consulting examiner, including the reports of decreased stamina and general fatigue. He reported the largely normal findings on physical examination including his ability to elevate on his heels and toes and squat.

The ALJ mentions the July 2020 visit and that his general appearance is ill-appearing, chronically ill, appears tired, unkempt appearance and appears older than his stated age but notes that the pulmonary examination was within normal limits. Tramel had been out of his medication for a few days. The ALJ's synopsis of the October 2020 visit notes Tramel "had no other complaints at this time" and that the January 2021 visit showed he was then asymptomatic.

The ALJ then stated "I note the large gap in the treatment records after January 2021, aside for a one time visit to Deep Blue Retina for CMV involving the left eye (discussed above as a non-severe impairment), through the date of this decision period. This suggests that mere conservative treatment was effective in controlling his symptoms and that the claimant symptoms were clearly not as bothersome as he has otherwise claimed during this period." R. 28.

The ALJ found the opinions of the state agency medical consultants were persuasive,

13

>as both limited the claimant to a full range of light exertional activity. This is consistent with and supported by the objective examinations in the record within normal limits, including the extensive objective examination conducted by Dr. Adams as discussed above. I have included additional environmental limitations to afford the claimant the benefit of any doubt in terms of the claimant's objective complaints.

The ALJ then added, "The overall file contains very few treatment records, but these records do illustrate general health with the exception of the CMV infection. The claimant's HIV symptoms have improved since diagnosis with treatment, and there has been no progression to AIDS." R.28.

## STEP TWO ERROR AND "CHERRY PICKING"

The plaintiff contends that the ALJ erred at Step 2 when he failed to address Tramel's AIDS diagnosis and do the severity determination. The plaintiff also argues that the ALJ cherry picked the record, focusing only on information that favored denial of benefits.

### No Step Two Error

The Commissioner argues that there is no error at Step 2 because Tramel failed to meet his burden of proof to show he has or had AIDS. The Commissioner argues that, absent acceptable clinical findings or lab or other diagnostic techniques, the ALJ cannot act on the claimant's subjective symptoms. The Commissioner also argues that Tramel's diagnosis cannot be AIDS because it typically takes eight to ten years after an HIV infection for AIDS to develop from an untreated infection. At oral argument it was also suggested that because HIV causes AIDS, the discussion of the HIV infection suffices, as

14

the difference is one of staging. However, these are post hoc arguments not set forth in the ALJ's decision. The decision must "stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) .

In the end, it is not disputed Tramel's AIDS diagnosis appears on the medical records and the ALJ failed to mention it. The AIDS diagnosis was made by his treating medical providers, and it also meets recognized criteria, both with objective lab work and his history of opportunistic infection. Additionally, the time between Trammel's diagnosis with HIV and with AIDS does not establish when he became infected. While the court does not suggest that the AIDS diagnosis is necessarily permanent, it is nevertheless significant to questions of functional impairment.

### **Any Step Two Error is Harmless**

The Commissioner argues any error by the ALJ at Step Two in failing to address the AIDS diagnosis is harmless, because the ALJ continued the decision through all five steps., citing *Reyes v. Sullivan*, 915 F.2d 151, 153-154 (5th Cir. 1987). But not every Step Two error is cured by the continuation of the decision-making analysis. As noted in *Cagle v. Colvin*, CV No. H-12-0296, 2013 WL 2105473 at* 5 (S. D. Tex. May 14, 2013), it is not the fact of going beyond Step Two that may purge prejudice from an erroneous Step Two decision. Rather,

> the failure to find a particular impairment severe at Step 2 is not reversible in and of itself, as long as the ALJ finds that at least one other impairment is severe. However even if an impairment is found nonsevere at Step Two, the ALJ must still 'consider the limiting effects of all [a claimant's] impairments even those that are not severe in determining the [R.F.C.] 20 C.F.R. §§ 404.15 45(e), 416.945(e); see also 20 C.F.R.§ 404.1523; Social Security Ruling 96- 8p, 1996 WL 374184 at* 5, *Loza v. Apfel*, 219 Fd3d 378, 393 (5th Cir. 2000)(the ALJ must "consider t

15

he combined effects of all impairments, without regard to whether any such impairment, is considered separately, would be of sufficient severity.")

*Cagle*, 2013 WL 2105473 at * 5.

The court cannot find the failure to acknowledge and address the AIDS diagnosis is harmless. This is a serious diagnosis, and it is fundamentally different from a diagnosis of an HIV infection. The court cannot conceive of a viable argument that AIDS does not constitute a "severe" impairment. While the CE's report was relied upon by the ALJ to find that Tramel had not progressed to AIDS, that report was not based on medical record, nor lab work, like the Aaron Henry diagnosis. The SAMC reports are also supportive of the ALJ's decision, but these reports contradict the diagnostic criteria for progression to AIDS. Assuming, but not deciding, that the ALJ could accept the HIV only diagnosed and reject the Aaron Henry diagnosis, nothing in his decision recognized the conflicting diagnoses, nor does he resolve this conflict. Having either missed the more serious diagnosis or having dismissed it without explanation, the ALJ's decision seems inherently and fatally flawed. The court cannot ascertain how he came to the decision that Tramel only had HIV, only minor functional limitations, and was not disabled at any time after his diagnosis.

At least during 2020, Tramel's medical records convinces the court that he was very sick. He was diagnosed with severe immunocompromise and consistent with that diagnosis was described by his health care providers as appearing very sick and malnourished. He suffered a dramatic involuntary weight loss of at least sixty pounds in a six-month period. The weight loss and the low CD4 counts certainly look like compelling corroboration of Tramel's' complaints of fatigue and malaise. The court finds it impossible to reconcile Tramel's 2020 records with any definition of "general health."

16

Furthermore despite improving symptoms, the last lab records -- the October lab work concurrent with the CE -- are clearly abnormal. The last information about Tramel's medical status is his testimony in December 2021 that his counts were still somewhat low.

The ALJ mentions several times that Tramel has normal musculoskeletal findings. This is pertinent in assessing an orthopedic injury. But normal range of motion, even normal basic strength testing that does not address endurance. The pertinent determination for Tramel is not whether he can elevate on his heels and toes once for an examiner, but whether he could repetitively perform that function. It is not whether he can squat once, but whether he has both the strength and stamina to perform this movement, and others repetitively in order to work.

In the final analysis, it is the questions, which this court cannot answer on the record, that demonstrates the prejudice to Tramel. Did the ALJ miss the diagnosis completely? Did he dismiss Tramel's complaints that were consistent with the AIDS diagnosis, because he "only" had an HIV infection? Did the ALJ believe the AIDS diagnosis was wrong and if so what was his reasoning? If he ALJ recognized the AIDS would he have come to a different RFC for some or a part of the time covered by the decision? Because the ALJ's decision does not make it possible for the court to answer any of these questions, the court finds that prejudicial error has occurred, and this action must be reversed and remanded.

Therefore, the decision of the Commissioner is hereby **REVERSED and REMANDED** for further consideration. The Commissioner shall take steps to obtain all lab work for Tramel from the date of his diagnosis with HIV forward, in addition to otherwise updating the medical records. The Commissioner is further directed either to address what work restrictions are appropriate during the Covid pandemic or explain why such restrictions are unnecessary or

inapplicable. Finally, the ALJ shall consider whether the claimant is entitled to a closed period of disability.

    **SO ORDERED AND ADJUDGED** this the 6th day of December, 2023.

                                          **/s/ David A. Sanders**
                                          **U.S. MAGISTRATE JUDGE**